1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| RYAN GREKO, | Case No. 10-cv-02576 NC |
| Plaintiff, | **ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF'S INCENTIVE AWARD** |
| v. | |
| DIESEL U.S.A., INC., | |
| Defendant. | Re: Dkt. No. 159 |

Plaintiff Ryan Greko filed this class action against Defendant Diesel U.S.A., Inc. alleging that Diesel misclassified assistant store managers as exempt thereby denying them compensation for overtime and missed meal and rest periods in violation of California law. *See* Dkt. No. 1. On March 6, 2013, the Court held a hearing on plaintiff's unopposed motion for (1) final approval of the class action settlement; (2) attorneys' fees and costs; (3) class representative's incentive award; and (4) payment of the fees and expenses of the settlement administrator. The parties have consented to this Court's jurisdiction for all purposes, including preliminary and final approval of the settlement. Dkt. No. 141 at 2. For the reasons that follow, the Court GRANTS the motion in its entirety.

*//*

**I. BACKGROUND**

**A.    Certification of the Class**

Plaintiff initiated this action in April 2010 in the San Francisco Superior Court.  Dkt. No. 1.  The complaint included claims for failure to pay wages and overtime, failure to pay minimum wages, failure to pay all wages upon separation, failure to provide meal and rest periods and/or wages in lieu thereof, failure to provide accurate wage statements and maintain accurate pay records, unfair business acts and practices, unjust enrichment, and declaratory relief.  *Id.* (alleging violations of Labor Code §§ 201, 202, 203, 204, 226(a), (e) & (g), 226.7, 510, 1182.12, 1194, 1194.2, 1197, California Industrial Welfare Commission Wage Order 7-2001, and Business and Professions Code § 17200).  Diesel removed the action to this Court in June 2010.  *Id.*

On March 3, 2011, Diesel filed a motion for summary judgment on the grounds that it properly classified Greko as an exempt employee under California's executive exemption, constituting a complete defense to each of Greko's causes of action.  Dkt. No. 32.  On March 31, 2011, plaintiff filed a motion for class certification.  Dkt. No. 43.  On October 26, 2011, the Court denied Diesel's motion for summary judgment, finding that there was a disputed issue of fact as to whether Greko was primarily engaged in non-exempt management duties.  Dkt. No. 101 at 7.  The Court also found that Greko had satisfied his burden under Rule 23 and granted his motion for class certification, certifying a class of "[a]ll persons employed as an Assistant Store Manager by Diesel in any of its California stores during any time between April 26, 2006 and the present."  *Id.* at 14.  The Court appointed Ryan Greko as a class representative and the Law Offices of Daniel Feder as class counsel.  *Id.*

Diesel challenged the order granting class certification by filing a petition for permission to appeal pursuant to Federal Rule of Civil Procedure 23(f) in the Ninth Circuit Court of Appeals, and also moved to stay the proceedings in this Court pending the Ninth Circuit's ruling on the petition for review.  Dkt. No. 106.  Plaintiff opposed both the petition for review and the motion to stay.  Dkt. No. 110.  After the Ninth Circuit denied

Case No. 10-cv-02576 NC
ORDER GRANTING FINAL APPROVAL                2
OF CLASS ACTION SETTLEMENT

Diesel's petition for review on January 10, 2012, this Court denied the motion to stay as moot.  Dkt. No. 115.

**B.   Preliminary Approval of the Settlement**

On April 2, 2012, the parties participated in a private mediation session before the Hon. Edward Infante, in the San Francisco offices of JAMS.  Dkt. No. 161 ¶ 23.  No settlement was reached at that time, although Judge Infante continued to be involved in efforts to settle the case.  *Id.*  On April 3, 2012, the parties participated in a settlement conference before this Court.  *Id.* ¶ 24; Dkt. No. 126.  Following these settlement conferences, the parties continued conducting discovery in anticipation of a trial beginning on November 26, 2012.  Dkt. Nos. 117; 161 ¶ 24.  Building on the previous mediation and settlement efforts, the parties finally reached a settlement that was memorialized in a memorandum of agreement executed in August 2012.  Dkt. Nos. 141; 161 ¶ 25; 161-2.

On November 7, 2012, this Court granted plaintiff's unopposed motion for preliminary approval of the class action settlement.  Dkt. Nos. 155, 157.  The Court found, after considering the pleadings and documents submitted, that "the proposed Settlement falls within the range of possible final approval as it is the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to the class representative or segments of either the Class or the Settlement Class.  It thus appears to this Court's satisfaction that the standards for preliminary class action settlement approval are met."  Dkt. No. 157.

The Court set a hearing on final approval of the settlement for March 6, 2013, and set deadlines for objecting to the settlement and for requesting exclusion from the settlement class.  *Id.*  The Court further ordered that class counsel's fee and expense application and plaintiff's application for any incentive award be filed along with the motion for final approval.  *Id.*

**C.   Key Provisions of the Settlement Agreement**

For purposes of the settlement agreement, the settlement class is defined as a class of "all persons employed by DIESEL in California as ASMs working at any time during the

Case No. 10-cv-02576 NC
ORDER GRANTING FINAL APPROVAL                3
OF CLASS ACTION SETTLEMENT

SETTLEMENT CLASS PERIOD." Dkt. No. 150-1 ¶ 1.23; *see also* Dkt. No. 169-1. The "SETTLEMENT CLASS PERIOD" is defined as "from April 23, 2006, through the date of the PRELIMINARY APPROVAL ORDER." Dkt. No. 150-1 ¶ 1.24. The settlement class consists of all thirty-three assistant managers, including two assistant managers who opted out during the original opt out period, and two additional assistant managers who declared under oath their intent to opt out of the class. *Id.* ¶ 1.23; Dkt. Nos. 160 at 9; 161 ¶ 28. These four individuals had the right to opt out of the settlement, but have chosen not to do so. Dkt. No. 160 at 9.

The settlement fund to be paid pursuant to the settlement agreement is $200,000. Dkt. No. 150-1 ¶ 1.25. The amount will be used entirely to make payments to the class, including all taxes, an incentive fee to the class representative of an amount up to $5,000, and for costs of administration of the settlement, up to $15,000. *Id.* ¶¶ 1.25, 6.1, 8.1, 9.1. If the payments to the class representative or to the settlement administrator are below the maximum amount authorized by the settlement agreement, the difference will remain part of the settlement fund. *Id.* ¶¶ 6.3, 8.1. The settlement payment will be made on a common fund, non-reversionary basis, and will not be altered as a result of class members opting out. *Id.* ¶ 2.2.

Each class member's share is determined based on the number of workweeks during the class period and their status as current or former employees. *Id.* ¶¶ 3.2.1, 3.2.2. There is no requirement that class members submit any claim form to recover under the settlement agreement. Payments will be mailed automatically to any class members who do not opt out. In the event that a class member cannot be located or fails to cash his/her check within 180 days, the monies will be distributed to an appropriate charitable organization agreed upon by the parties, pursuant to the *cy pres* doctrine. *Id.* ¶¶ 4.2, 4.3.

The settlement agreement further provides for an award of reasonable attorneys' fees and costs in an amount up to $335,000, which is separate from and in addition to the settlement fund. *Id.* ¶ 7.1. The settlement is not contingent upon the Court's approval of the requests for incentive payment and attorneys' fees and costs. *Id.* ¶¶ 6.1, 7.2. Diesel has

agreed not to oppose these requests.  *Id.*  ¶¶ 6.2, 7.1.

Pursuant to the settlement agreement, the class members will be deemed to have released all claims, rights, and liabilities against the "RELEASED PERSONS," whether known or unknown, arising from, or related to, the same facts alleged in or that reasonably could have been included in the class action complaint, and which have accrued from April 23, 2006 through the date of the preliminary approval.  *Id.* ¶¶ 1.18, 11.1.  The release includes all California statutes expressly set forth in the complaint, any and all claims that could be brought by private plaintiffs under the statutes identified in Labor Code § 2699.5 of California's Private Attorneys General Act, California Business & Professions Code §§ 17200 *et seq.*, and all applicable IWC Wage Orders, including Order 7-2001.  *Id.*  The class members would waive any claims not known at the time of the release under California Civil Code § 1542.  *Id.*  The settlement agreement defines "RELEASED PERSONS" as "DIESEL and its former and present parents, subsidiaries, and affiliates, and their officers, directors, employees, partners, shareholders and agents, attorneys, and any other successors, assigns, or legal representatives."  *Id.* ¶ 1.19.

**D.    Notice to the Class**

The Court previously approved the form of the written notice that was mailed to the class members by the settlement administrator.  Dkt. No. 157.  The Court reiterates its prior findings, and hereby finds that the mailed notice fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and settlement on other actions raising similar claims, the class members' rights to exclude themselves from this action, and their rights to object to the proposed settlement.  *Id.*; Dkt. No. 150-2.

On December 12, 2012, the settlement administrator, Simpluris, mailed the notice of settlement to the thirty-three class members on the class list with addresses provided by Diesel, updated by Simpluris through the National Change of Address Database.  Dkt. No. 163 ¶¶ 2-3.  Ten notices were returned by the United States Post Office.  *Id.* ¶ 4.  Simpluris secured an updated address via Skip Trace address search for four class members.  *Id.*

Ultimately, one returned notice was undeliverable. *Id.* Simpluris also received communications from class counsel regarding a number of class members who had not received notices, and in those instances, notices were remailed to additional addresses provided by class counsel. *Id.* ¶ 5. Simpluris provided a toll free number for class members to call with questions. *Id.* ¶ 6. As of April 24, 2013, Simpluris has failed to locate the address for only one class member, who is entitled to a total payout of $3,724. Dkt. No. 169 ¶ 7.

The deadline to submit a request for exclusion from the settlement class was January 11, 2013 (thirty calendar days after the mailing of the notice). Dkt. Nos. 163 ¶ 7; 157. The deadline to object to the settlement, class counsel's request for attorneys' fees and costs, and the representative plaintiff's request for an incentive payment was sixty calendar days after the notice was first mailed. Dkt. No. 157. The Court finds that there was an adequate interval between the mailed notice and the opt-out deadline, and between the mailed notice and the objection deadline, so as to permit class members to choose what to do, and to act on their decisions. As of January 22, 2013, Simpluris had not received any requests for exclusion. Dkt. No. 163 ¶ 7.

The Court held a final fairness hearing on March 6, 2013. The parties appeared at that hearing and were heard by the Court. No objectors appeared.

## II. DISCUSSION

**A.    Approval of the Settlement**

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted). The Ninth Circuit

has identified a number of factors that a court should take into consideration in determining whether to approve a proposed settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citation omitted). These factors are not exclusive, and some factors may warrant more weight than others depending on the circumstances. *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The Court has evaluated the settlement agreement in this case for overall fairness under the *Churchill* factors and concludes that the settlement should be approved.

### 1.   The Strength of Plaintiff's Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

A consideration of the strength of plaintiff's case, the risk, expense, complexity and likely duration of further litigation, including the risk of maintaining class action status throughout the trial, shows that these factors favor approval of the settlement. The Court finds that plaintiff has shown that Diesel intended to vigorously defend against this action had the parties not reached a settlement. As such, there is substantial risk in litigating this case further. Diesel has denied and continues to deny liability for the class members' claims. Dkt. No. 150-1 at 2. Moreover, class counsel recognizes that the risk of maintaining class action status is a substantial barrier to recovery that plaintiff must overcome if the case proceeds to trial. Dkt. No. 160 at 13-14. Diesel has consistently stated that it intends to file a motion to decertify the class prior to trial, and that intention is affirmed in the settlement agreement itself. Dkt. Nos. 150-1 at 2; 161 ¶ 26. As class counsel points out, this uncertainty is due in large part to (1) the small size of the class, which at most totals thirty-three individuals, and the possibility that opt outs could further decrease the size, supporting a decertification motion on the issue of lack of numerosity;

and (2) the developments in the law on the certification of wage and hour class actions,
resulting in uncertainty regarding the need for individualized inquiry (such as, for example,
specific job duties of assistant managers from store to store and over time), and how that
might affect the question of the predominance of common questions of law and fact. *See*
Dkt. Nos. 160 at 13-14; 101 at 14:4-7.  A motion for decertification would, at the very least,
entail significant expense, and if successful, would have a dramatic effect on the ability of
the absent class members to obtain any monetary recovery whatsoever.  The settlement
avoided that risk, while providing an ample settlement fund for the entire class, including
class members who had previously opted-out. *See* Dkt. No. 161 ¶¶ 26, 28.

Moreover, even with a strong case, further litigation would be time-consuming and
expensive for both sides.  Given the risks associated with continued litigation, the
settlement agreement, which offers an immediate and certain award for all of the class
members, appears to be in the best interests of plaintiff and the class.

### 2.     The Amount Offered in Settlement

The settlement administrator calculated that the estimated gross value of the thirty-
three settlement payments is $188,500.  The estimated average settlement payment is
$5,454.55, with a minimum payment of $1,074.53, and a maximum payment of $14,641.36.
Dkt. No. 163 ¶ 8.  Using information provided by Diesel, class counsel assessed the
damages that the class would be able to seek at trial.  Dkt. No. 161 ¶ 26.  According to class
counsel, the settlement amount payable to class members represents approximately 24
percent of the damages amounts that were modeled based on interviews with and
depositions of class members, time records and related information produced by Diesel, as
well as the substantial written discovery and deposition testimony taken in this case. *Id.*  "It
is well-settled law that a cash settlement amounting to only a fraction of the potential
recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*,
688 F.2d at 628 (citation omitted); *see, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d
1036, 1042 (N.D. Cal. 2008) (approving settlement in which class received payments
totaling 6% of potential damages); *Glass v. UBS Fin. Servs., Inc.*, No. 06-cv-4068 MMC,

2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of wage and hour class action for 25% to 35% of the claimed damages to be reasonable).

The Court finds the settlement amount reasonable and beneficial to the class, especially in light of the uncertainties involved in the litigation.  In so holding, the Court does not rely on plaintiff's contention that "Diesel was induced to phase out the ASM position and replace it with a non-exempt senior store supervisor position" which is disputed by Diesel.  *See* Dkt. Nos. 160 at 19; 166 at 2.

The Court also finds that the *cy pres* component of the settlement satisfies the requirements for approval of *cy pres* distribution reiterated recently by the Ninth Circuit. In order to "ensure that the settlement retains some connection to the plaintiff class and the underlying claims, a *cy pres* award must qualify as 'the next best distribution' to giving the funds directly to class members."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citation omitted).  There must be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries."  *Id.*  Thus, a *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, . . . , and must not benefit a group too remote from the plaintiff class."  *Id.*  (internal quotation marks and citations omitted).

While the settlement agreement here does not specify the recipient of any unclaimed settlement benefits, in response to the Court's request for supplemental briefing, the parties identified the Legal Aid Foundation of Los Angeles ("Legal Aid Foundation") as the agreed-upon *cy pres* recipient.  Dkt. Nos. 168, 169.  The Legal Aid Foundation's employment unit provides assistance to individuals in the area of employment law, including disputes regarding violations of the Labor Code alleged in the underlying class action complaint.  Dkt. No. 169 ¶¶ 5, 8; *see* Dkt. No. 1.  The Legal Aid Foundation was also selected because two thirds of the class members reside in Southern California where the foundation is located, and thus, geographically, the Legal Aid Foundation would provide services to members of society in the area where the greatest number of class members reside.  Dkt. No. 169 ¶ 6.  The Court finds that the Legal Aid Foundation's

employment unit provides the requisite nexus to the interests of the class members, the nature of their claims, and the purpose of the underlying statutes, and thus qualifies as the next best distribution to the class.

Moreover, the anticipated distribution to the *cy pres* beneficiary in this case is relatively small.  The settlement agreement does not require class members to submit any claim form to recover under the settlement, and provides that payments will be mailed automatically to any class members who do not opt out.  Dkt. No. 150-1 ¶¶ 4.2, 4.3. Therefore, a *cy pres* distribution will only occur if the administrator is unable to locate a class member, and/or, a recipient fails to cash his or her check within 180 days.  *See id.*  At this time, there is only one individual from the class for whom there has been no address found, who is entitled to a total payout of $3,724.  Dkt. No. 169 ¶ 7.  This amount is relatively low considering that the total settlement payout amount to class members is $188,500, or, an average of $5,454.55 per class member, which further weighs in favor of approval of the *cy pres* component of the settlement here.  *See Id.*; Dkt. No. 163 ¶ 8.

In evaluating the fairness of the settlement the Court has also considered the scope of the release.  The settlement agreement here provides that the class members will release all claims "arising from, or related to, the same facts alleged in or that reasonably could have been included" in the complaint in this action, that accrued during the "SETTLEMENT CLASS PERIOD," defined as the period from April 23, 2006, through November 7, 2012. Dkt. No. 150-1 ¶¶ 1.18, 1.24.  While the scope of this release appears broad, it is permissible because it only encompasses claims that are based on the same factual predicate as that underlying the claims asserted in the complaint, and does not release unrelated claims.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).  The Court thus finds that the scope of the release does not render the settlement unfair.

### 3.     The Extent of Discovery Completed and the Stage of the Proceeding

This case settled after more than two years of active litigation.  Both before and after class certification, class counsel engaged in extensive legal and factual investigation of Diesel's policies and practices, as well as substantial pre and post certification written

discovery and depositions. Dkt. Nos. 161 ¶ 16; 164 ¶ 7. As the parties acknowledged in their memorandum of agreement, "throughout this litigation the Parties have engaged in extensive discovery, including, but not limited to, the following: Plaintiff has taken the depositions of five current Diesel employees, one former employee, and three party representatives spanning a total of eleven days of depositions; Defendant has taken the deposition of Plaintiff, as well as four other current or former ASMs spanning a total of six days of depositions; each Party has propounded written discovery on the other; Plaintiff has propounded three sets of requests for production of documents and information, and Defendant has produced more than 18,000 pages and files of documents and information." Dkt. No. 161-1 at 2. Settlement thus occurred after substantial written discovery and deposition testimony were taken in this case. Dkt. No. 161 ¶¶ 16, 24-26. Because by the time the settlement was reached, counsel possessed a sufficient understanding of the issues involved and the strengths and weaknesses of the case, this factor favors settlement.

### 4. The Experience and Views of Counsel

The representative plaintiff and class counsel have determined that the settlement agreement constitutes a fair, adequate and reasonable settlement, and is in the best interest of plaintiff and the class. Dkt. Nos. 161 ¶ 26, 28; 164 ¶ 9; 162 ¶ 7. In addition to being familiar with the present dispute, class counsel has considerable expertise in employment, complex, and class action litigation. Dkt. Nos. 161 ¶¶ 2-13; 164 ¶¶ 3, 5; 149 ¶¶ 2-3. *See also Bibo v. Fed. Exp., Inc.*, No. 07-cv-2505 TEH, 2009 WL 1068880, at *8 (N.D. Cal. Apr. 21, 2009) (on a motion for class certification, finding the Law Offices of Daniel Feder adequate counsel with sufficient experience in pursuing class cases). Therefore, the views of counsel support approval of the settlement as well.

### 5. The Reaction of Class Members to the Proposed Settlement

No class members objected to the settlement agreement. Four individuals initially opted out (or indicated an interest in removing themselves from the class after the expiration of the opt-out period) but subsequently elected not to opt out from the settlement class. Dkt. Nos. 161 ¶ 28; 163 ¶ 7. The absence of a negative reaction by the class

members strongly supports approval of the settlement.

Finally, the Court reaffirms its prior finding that the settlement is the product of serious, informed, non-collusive negotiations. *See* Dkt. No. 157. The settlement was reached months after both non-judicial and judicial mediation efforts were initiated and the parties participated in two settlement conferences including one before this Court. Dkt. No. 161 ¶¶ 23-25. This litigation was hard-fought by competent counsel and the settlement agreement was the result of good-faith negotiations at arm's length, and not a product of collusion. For this reason, and the additional reasons discussed in connection with the Court's assessment of the reasonableness of class counsel's request for attorneys' fees, the Court finds that the amount of fees authorized in the settlement agreement is reasonable, despite that it exceeds the class recovery, that it is separate from the settlement fund so any reduction of the amount will revert to Diesel, and Diesel's agreement not to challenge the attorneys' fees request. *See Lobatz v. U.S. West Cellular of California, Inc.*, 222 F. 3d 1142, 1148-1149 (9th Cir. 2000); *cf. In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947-49 (9th Cir. 2011).

After considering the above factors, as well as the request for attorneys' fees and costs, and class representative's incentive award discussed below, the Court finds the settlement to be fair, reasonable, and adequate to the class within the meaning of Federal Rule of Civil Procedure 23(e). The Court, therefore, GRANTS plaintiff's motion for final approval of the settlement.

**B.    Approval of the Attorneys' Fees and Costs**

Rule 23(h) of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Courts, however, "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941 (citations omitted). Under both Ninth Circuit and California law, courts have discretion to use the lodestar method in awarding attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d

1043, 1047 (9th Cir. 2002) (law governing the claim also governed the award of fees in common fund case); *In re Bluetooth*, 654 F.3d at 942 ("Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method.") (citations omitted); *accord Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001). Here, class counsel contends that the fee request is appropriate under the lodestar analysis. The Court concurs.

**1.     Lodestar Method**

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citation omitted). "Though the lodestar figure is presumptively reasonable, . . . the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment, . . . Foremost among these considerations, however, is the benefit obtained for the class." *Id.* at 941-42 (internal quotation marks and citations omitted).

In determining a reasonable amount of hours, the Court must review time records to decide whether the hours claimed by the applicant are adequately documented and whether any of the hours were unnecessary, duplicative, or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). To determine reasonable hourly rates, the Court must look to the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979-80 (9th Cir. 2008) ("[A]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate.") (quotation omitted). Generally, the relevant community is the forum in which the district court sits, or a community shown to be

comparable to that forum. *Id.* at 979.

In determining the reasonableness of the fee, the Court may consider any applicable factor listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) such as: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skills requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 70; *see also Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1165 (N.D. Cal. 2012).

### i. Reasonableness of Hourly Rates and Hours Spent

As noted above, the settlement agreement provides for an award of reasonable attorneys' fees, expenses, and costs in an amount of up to $335,000, which is separate from and in addition to the settlement fund. Dkt. No. 150-1 ¶ 7.1. The notice mailed to the class on December 12, 2012 stated that "Settlement Class Counsel will ask the Court to approve payment of an attorney fee award of three hundred and thirty five thousand dollars ($335,000), separate and apart from the Settlement Fund. These fees would pay Settlement Class Counsel for investigating the facts, litigating the case, incurring lawsuit-related expenses, and negotiating the Settlement. The Court may award less than this amount without affecting the validity of the Settlement." Dkt. No. 163 ¶ 2, at 8. Class counsel here seeks an award of the full amount authorized by the settlement agreement which is significantly less than counsel's actual lodestar. After deduction of out-of-pocket expenses and costs, $292,446.18 remains for payment of attorneys' fees. Dkt. No. 161 ¶ 22. Counsel does not seek an upward adjustment of the lodestar.

In support of the motion for attorneys' fees, plaintiff submitted declarations by Daniel Feder and Helen Marsh. In his declaration, Mr. Feder provides a summary of the hours expended by the attorneys working on the case, their hourly rates, and lodestars. Dkt. No.

161 ¶ 20.  Mr. Feder's declaration shows that class counsel has spent approximately 2,500 hours on this case to date, not accounting for some unrecorded time as described in class counsel's declaration.  *Id.* ¶¶ 18, 22.  The total lodestar fees for this case through January 13, 2013 are $1,354,885.  *Id.* ¶ 21.  While the total lodestar includes work by eight different attorneys, the majority of the work was done by Helen Marsh and Claire Cochran, in close collaboration with Daniel Feder.  Dkt. No. 161 ¶ 20.  Both Ms. Cochran and Ms. Marsh have worked on this case continuously since the Fall of 2010.  Dkt. Nos. 149 ¶ 3; 164 ¶ 3.  Ms. Cochran was actively involved in this case through February 2012, when she left for maternity leave.  Dkt. No. 149 ¶ 3.  During her absence, Bailey Bifoss, another attorney employed by Mr. Feder, also worked on this case.  Dkt. No. 164 ¶ 3.

The number of hours expended by class counsel is reasonable given the length of the lawsuit and the disputes over the course of the litigation.  Diesel vigorously defended the case including by moving for summary judgment, resisting many efforts to obtain discovery and information that might support certification, opposing plaintiff's motion for class certification, and then challenging the certification order in the court of appeals.  Dkt. Nos. 161 ¶ 16; 164 ¶ 7.  Because of the efforts undertaken by Diesel to fight the claims, class counsel was forced to invest a significant number of attorney hours to bring about this result, amounting approximately to 20 percent of the "law firm's total resources in terms of staff and man hours."  Dkt. No. 161 ¶¶ 16-17.  The Court finds that, in light of the significant amount of work class counsel did in this case, the number of hours spent by counsel is reasonable.  The time spent does not appear to be unnecessary, duplicative, or excessive.

The total lodestar of $1,354,885 is based on attorney hourly rates ranging from $300 to $700.  Dkt. No. 161 ¶ 20.  The hours and hourly rates of the principal attorneys who worked on this case are as follows:  225.8 hours at $700 for Daniel Feder (a 1987 graduate); 1,664.2 hours at $600 for Helen Marsh (a 1976 graduate); 342.4 hours at $400 for Claire Cochran (admitted to the California Bar in December 2002); and 149.4 hours at $300 for Bailey Bifoss.  *Id.*  Class counsel has provided declarations which support the qualifications

of the attorneys who had principal involvement in the case, including their expertise in employment, complex, and class action litigation.  Dkt. Nos. 161 ¶¶ 2-13; 164 ¶¶ 2-5; 149 ¶¶ 2-4.  *See also Bibo*, 2009 WL 1068880, at *8.  The affidavit submitted by Mr. Feder states that, in view of his extensive experience in all aspects of employment litigation, managing class actions as class counsel, many years of experience, and previous fee awards, he believes his hourly rate should be commensurate with senior partners of major national law firms in the San Francisco Bay Area, which, based on his knowledge of the industry, is "$700 per hour at the low end."  Dkt. No. 161 ¶ 13.  Mr. Feder further states that his rate is consistent with previous decisions of other courts regarding his rate, "adjusted in certain instances for additional years of experience and cost of living increases, in comparable cases, and with the rates charged by other lawyers with 26 years experience in the Bay Area market."  *Id.*  Ms. Marsh's declaration states that she has "been employed by a number of top tier law firms, including, from 1996 through 2010," where her focus was complex civil litigation, and that she is a "frequent speaker at MCLE events on topics relating to case management and electronic discovery."  Dkt. No. 164 ¶ 5.  Ms. Cochran states that she has been working "in the area of employment litigation since October 2008" and that she has worked "on many class action matters, on both the defense and plaintiff's side."  Dkt. No. 149 ¶ 2.

Dividing the total amount of attorneys' fees sought by class counsel ($292,446.18) by the total number of hours expended (2,500), the result is a compensation at an average rate of approximately $121.  Dkt. No. 161 ¶ 22.  The requested rate of $121 is significantly lower than class counsel's actual hourly rates, and is certainly within the range of reasonable hourly rates for attorneys of comparable skill, experience, and reputation litigating similar cases in the San Francisco Bay Area.  *See Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1099-1100 (N.D. Cal. 2010) (finding reasonable market rates from $380 to $775 per hour for experienced employment and civil rights attorneys in the Northern District); *see also Lafever v. Acosta, Inc.*, No. 10-cv-1782 BZ, 2011 WL 5416650, at *2 (N.D. Cal. Nov. 8, 2011) (collecting cases).  Accordingly, the Court finds

1   that the average rate of $121 upon which the requested attorneys' fees award is based, is

2   reasonable.

3                    **ii.    Additional Factors**

4       The reasonableness of the fees sought by class counsel is further supported by the

5   positive result obtained for the class.  The settlement amount payable to class members

6   represents approximately 24 percent of the potential damages for the entire class, including

7   class members who had previously opted-out. Dkt. No. 161 ¶ 26.  This result is beneficial

8   for the class.  Notably, no class members have objected to the settlement or the proposed

9   fee award communicated in the notice mailed to the class.  *See* Dkt. No. 163.

10      Additionally, as noted above, class counsel faced considerable risks in litigating this

11  case due to Diesel's vigorous defense and the legal uncertainty regarding certification of a

12  relatively small class and the state of the law on certification of misclassification claims.

13  Dkt. No. 160 at 13-14.  Class counsel worked on a contingency basis and risked receiving

14  nothing for the time and effort expended and losing any out of pocket investment in costs.

15  Dkt. No. 161 ¶ 14.  Accordingly, the risk of nonpayment assumed by class counsel also

16  supports the reasonableness of the requested attorneys' fee award.

17                   **2.    Percentage–of–the–Fund Comparison**

18      Even in cases where the lodestar method is an appropriate method of fee calculation,

19  the Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-

20  checking their calculations against a second [percentage-of-recovery] method." *In re*

21  *Bluetooth*, 654 F.3d at 944 (citations omitted).  Applying the percentage-of-recovery

22  method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee

23  award, providing adequate explanation in the record of any 'special circumstances'

24  justifying a departure." *Id.* at 942 (citations omitted).  The Ninth Circuit has also

25  recognized, however, that "the 25% benchmark rate, although a starting point for analysis,

26  may be inappropriate in some cases.  Selection of the benchmark or any other rate must be

27  supported by findings that take into account all the circumstances of the case." *Vizcaino*,

28  290 F.3d at 1048; s*ee also Cicero v. DirecTV, Inc.*, No. 07–cv–1182, 2010 WL 2991486, at

Case No. 10-cv-02576 NC
ORDER GRANTING FINAL APPROVAL          17
OF CLASS ACTION SETTLEMENT

*6-7 (C.D. Cal. Jul. 27, 2010) (observing that it is common practice to award attorneys' fees at higher percentage than the 25% benchmark in cases that involve relatively small—i.e., under $10 million—settlement fund).

Here, the amount of $335,000 sought by class counsel for attorneys' fees and costs is high in comparison with the $200,000 settlement fund. After deducting the amount of the costs, class counsel is seeking $292,446.18 for payment of attorneys' fees. Dkt. No. 161 ¶ 22. That amount is approximately 1.5 times higher than the estimated total gross value of the thirty-three settlement payments ($188,500), as calculated by the settlement administrator. Dkt. No. 163 ¶ 8. A disproportion between the fee award and the settlement amount obtained for the class, however, is not *per se* unreasonable. *See In re Bluetooth*, 654 F.3d at 945; *see also Stonebrae, L.P. v. Toll Bros., Inc.*, No. 08-cv-0221 EMC, 2011 WL 1334444, at *18  (N.D. Cal. Apr. 7, 2011) *aff'd in* Nos. 11–16161, 11–16274, 2013 WL 1277425 (9th Cir. Mar. 29, 2013) (observing that "Courts have upheld fee awards which have equaled or even exceeded the amount of damages recovered."); *In re HP Inkjet Printer Litig.*, No. 05-cv-3580 JF, 2011 WL 1158635, at *10 (N.D. Cal. Mar. 29, 2011) (awarding $1.5 million in attorneys' fees and about $600,000 in costs in class action where the benefit of the settlement to the class was valued approximately at $1.5 million in e-credits for HP products).

The Court finds the requested attorneys' fees award justified and reasonable in light of the following:  (1) the class at most totals thirty-three individuals; (2) the settlement amount obtained for the class is significant when compared to the amount of potential damages; however, due to the small class size, the comparison of that amount with the amount of attorneys' fees is not very useful in assessing the reasonableness of the fees; (3) the 2,500 hours expended by class counsel in prosecuting this action resulting in a total lodestar of $1,354,885 are reasonable; (4) the requested fee award, based on an average hourly rate of $121, is low when compared to class counsel's total lodestar of $1,354,885; (5) class counsel worked on a contingency basis and faced a high risk of non-payment due to Diesel's vigorous defense and the uncertainty regarding class status; (6) the settlement

was obtained after more than two years of active litigation; (7) the settlement was not collusive but was the result of arms-length negotiations, including two settlement conferences, one of which before this Court, and several weeks of additional negotiation efforts; and (8) there is no evidence that Diesel has been induced to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class.

### 3.    Costs

Class counsel is entitled to reimbursement of reasonable expenses.  Fed. R. Civ. P. 23(h); *see Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement).  Mr. Feder's declaration, attaching a report detailing the expenses incurred, states that the total amount of out-of-pocket expenses and costs incurred by class counsel prosecuting this case through November 2012 is $42,553.82, not including any overhead expenses.  Dkt. Nos. 161 ¶ 21; 161-1.  The Court finds that these costs are reasonable.

Therefore, class counsel's motion for attorneys' fees in the amount of $292,446.18 and costs in the amount of $42,553.82 is GRANTED.

### 4.    Named Plaintiff's Incentive Award

The class representative requests an incentive award of $5,000, which is the maximum amount authorized by the settlement agreement, and which Diesel agreed not to contest.  Dkt. No. 150-1 ¶¶ 6.1, 6.2.  The notice mailed to the class stated that "up to $5,000" will be deducted from the settlement fund, as an incentive payment to the class representative, before making individual payments to the class members.  Dkt. No. 163 ¶ 2, at 6.

Courts must evaluate named plaintiffs' awards individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation."  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  "Such awards are discretionary . . . and are intended to compensate class

representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

The affidavit submitted by Ryan Greko estimates that he spent "in excess of one hundred hours on this case" and states that he "sought advice of counsel before this action was filed, selected counsel, provided information and feedback on the investigation of the claims, reviewed pleadings and discovery documents, attended meetings with Class Counsel, had [his] deposition taken for two days, attended the initial portions of the mediation and settlement conferences in April 2012, and was always available for consultation by email or telephone . . . [and has] been in frequent communication with Class Counsel since the inception of this case." Dkt. No. 162 ¶¶ 4-5.  The Court finds that the requested incentive payment is reasonable and justified by the risks taken by Mr. Greko and the efforts expended by him in his capacity as a class representative.  Dkt. Nos. 162 ¶¶ 4-6, 8; 164 ¶ 8.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 to each of two plaintiff representatives of 5,400 potential class members in $1.75 million settlement); *Hopson v. Hanesbrands, Inc.*, No. 08-cv-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (approving $5,000 award to one member of 217 member class from $408,420 settlement amount); *Glass*, 2007 WL 221862, at *16–17 (approving $25,000 award to each of four plaintiff representatives of 13,176 member class from $45 million settlement amount).

Further, the amount of the requested incentive award is similar to the estimated average settlement payment of $5,454.55, and thus does not exceed the amount that absent class members could expect to get upon settlement approval.  Dkt. No. 163 ¶ 8.  Moreover, nothing in the record indicates that the incentive award was conditioned on the class representative's support for the settlement, or that there was any fraud or collusion.  The Court finds that the incentive award did not create a divergence of interests between the named representative and the class.  *Cf. Radcliffe v. Experian Information Solutions Inc.*,

No. 11-56376 (9th Cir. Apr. 22, 2013).  Accordingly, the Court GRANTS the request for a $5,000 incentive payment to class representative Ryan Greko.

**5.    Settlement Administrator's Fee**

The Court finds that the fee of the class administrator is reasonable, and hereby approves the payment of $6,500 to Simpluris, Inc.  Dkt. Nos. 150-1 ¶ 8.1; 163 ¶ 9, at 6.

### III. CONCLUSION

Accordingly, IT IS HEREBY ORDERED as follows:

1.    The class covered by this order is defined as: "all persons employed by Diesel U.S.A., Inc. in California as an Assistant Store Manager working at any time during the period from April 23, 2006 through November 7, 2012."

2.    The Court determines that the notice provided to the class pursuant to this Court's preliminary approval order concerning the settlement and the other matters set forth therein, was the best notice practicable under the circumstances and included individual notice to all members of the class who could be identified through reasonable efforts.  Such notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

3.    The Court finds that the settlement is fair, reasonable, and adequate, and hereby finally approves the settlement agreement.

4.    The Court orders the parties to perform their obligations pursuant to the settlement agreement.

5.    The Court confirms as final the appointment of plaintiff Ryan Greko as the class representative, and of the Law Offices of Daniel Feder as class counsel.

6.    The Court approves the selection of the employment unit of The Legal Aid Foundation of Los Angeles as a *cy pres* beneficiary of any unclaimed settlement benefits pursuant to the settlement agreement.

7.    The Court grants plaintiff's motion for attorneys' fees in the amount of $292,446.18 in fees and $42,553.82 in costs to be paid by Diesel in accordance with the settlement agreement.

8.     The Court approves an incentive payment to the class representative, Ryan Greko, in the amount of $5,000 to be paid out of the settlement fund in accordance with the settlement agreement.

9.     The Court approves a payment to the settlement administrator, Simpluris, Inc., for its fees and expenses in connection with the administration of this settlement in the amount of $6,500 to be paid out of the settlement fund in accordance with the settlement agreement.

10.     Pursuant to the settlement agreement, all class members are deemed to have waived and released the "RELEASED PERSONS" from the "RELEASED CLAIMS" as set forth in ¶¶ 1.18, 1.19, 11.1, 11.2, and 11.3 of the settlement agreement.

IT IS SO ORDERED.

Date: April 26, 2013

Nathanael M. Cousins
United States Magistrate Judge